UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                                    <u>Complaint</u>
                                    Civil Action No.
                 Plaintiff,                CV-23-2454

       -against-

APEX CHICAGO IL, LLC, AND
INTEGRA AFFORDABLE
MANAGEMENT, LLC,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiff, the UNITED STATES OF AMERICA, by and through its attorney, BREON PEACE, United States Attorney for the Eastern District of New York, Edward Newman, Assistant United States Attorney, of counsel, brings this complaint herein and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.     This is a civil action brought by the Plaintiff United States of America ("United States" or "Plaintiff") on behalf of its agencies, the United States Department of Housing and Urban Development ("HUD") and the United States Department of the Treasury ("Treasury"), to enforce collection of a debt of $702,266.75, pursuant to the Federal Debt Collection Procedures Act,  28 U.S.C. § 3001(a)(2).

2.     The debt is based upon the failure of Defendant Apex Chicago IL, LLC ("Apex") and Defendant Integra Affordable Management, LLC ("Integra") (collectively, "Defendants") to pay penalties and associated costs assessed by the administrative law judge in HUD's administrative law case docket No. 22-AF-0111-CM-005.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345.

4.      Venue in the Eastern District of New York is appropriate, pursuant to 28 U.S.C. § 1391(b), because Apex is located at 2365 Nostrand Avenue, Brooklyn, New York, 11210 in the Eastern District of New York.

## THE PARTIES

5.      HUD is an executive department of the United States Government, established by 42 U.S.C. § 3531, *et seq*.

6.      Apex is a limited liability company organized under the laws of the State of Illinois and is the owner of record of the Ellis Lakeview Apartments ("Ellis").

7.      Ellis is a multifamily property in Chicago, Illinois that receives project-based assistance from HUD under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

8.      Integra is a limited liability company organized under the laws of the State of Delaware.  Integra functions at the absolute direction of Apex and its owners.  It is an alter ego of and shell for Apex and shares an identity of interest as the management agent for Ellis, allowing personal jurisdiction over it.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

9.      All of Integra's business is directed by its owners through other shell companies. Two such shell companies  manage Integra's finances and human resource functions and employ Integra's members respectively. Both shell companies  are New York limited liability companies registered at the same address as Apex: 2365 Nostrand Ave., Brooklyn, New York.

## FACTS AND PROCEEDINGS BELOW

10.     HUD oversees national housing programs on behalf of the United States and investigates and conducts administrative proceedings concerning violations of federal rules and regulations related to fair housing.

11.     Pursuant to Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, HUD is authorized to pay rental assistance payments to owners of rental properties to assist eligible families in obtaining decent, safe, and sanitary rental housing.

12.     HUD's assistance payments are conditioned on the owner complying with HUD's regulations and program requirements for the administration of HUD's project-based assistance program.

13.     HUD's project-based assistance program requires that rental-assistance units be decent, safe, sanitary, and in good repair.

14.     HUD's regulations at 24 C.F.R.§ 5.703 set forth the standards that must be met for housing to be considered decent, safe, sanitary, and in good repair.

15.     Additionally, owners are responsible for "all ordinary and extraordinary maintenance." 24 C.F.R. § 886.318(a)(2).

16.     HUD's assistance may be provided as project-based assistance pursuant to a Housing Assistance Payments ("HAP") contract, whereby the owner agrees to lease certain units to eligible families and HUD agrees to provide monthly assistance payments. 42 U.S.C. § 1437f(o)(13).

17.     On October 25, 1984, a HAP contract was executed for Ellis, labeled as contract number 1L06-E000-057. HAP contract IL06-E000-057 was renewed in 2015 and assigned to Apex in 2019, with a remaining duration of sixteen years (the "HAP Contract").

18.     Apex is the owner of record of Ellis and has been since at least their execution of the HAP Contract Assignment on July 29, 2019.

19.     Integra has served as the management agent for Ellis since Apex became the Owner.

20.     Apex reported in its Fiscal Year 2019 and 2020 Financial Statements filed with HUD on March 30, 2020 and February 23, 2021, respectively that Ellis is owner managed.

21.     HUD's Management Agent Handbook, HUD 4381.5 Rev-2, provides that an identity-of-interest relationship is one where the individual or entity that provides management services to the project has a relationship with the project owner such that selection of the management agent and determination of the management fee will not be determined through an arms-length transaction.  *See* HUD Handbook 4381.5, Rev-2, § 2.3; 42 USC 1437z-1(h)(1)(b), (h); 24 CFR § 30.68.

22.     From July 29, 2019 forward, and at all relevant times thereafter Ellis received monthly assistance pursuant to the HAP Contract.

23.     HUD staff conducted a virtual site review of Ellis on April 9, 2021, and an onsite review of Ellis on August 30 and 31, 2021, and found:

    a.     significant violations of the Uniform Physical Conditions Standards in twelve units, including low water pressure, water damage, cracked and damaged walls and ceilings, mold, pest infestations, and cracked and peeling paint, among other things.

    b.     project-wide water system issues for the three-month period from February 2021 through April 2021 and the three-month period from May 2021 through August 2021, during which certain units in Ellis experienced a lack

of adequate hot water pressure, absence of hot water, and/or slow drainage and sediment back-up into fixtures.

24.     These violations of the Uniform Physical Conditions Standards rendered certain units and Ellis as a whole not decent, safe, sanitary, or in good repair.

25.     A violation of the decent, safe, sanitary, and in good repair requirement is a material breach of the HAP contract and impacts Defendants' right to receive assistance payments from HUD.

26.     Each of these documented instances of the housing not meeting the decent, safe, sanitary, and in good repair requirement, constituted a separate breach of the HAP contract between Defendants and HUD.

27.     Defendants had on-site representatives at Ellis at this time who interacted regularly with tenants regarding the physical condition of Ellis.

28.     The tenants' association regularly communicated with the Owner and Management Agent about specific in-unit and project-wide problems.

29.     Each month under the HAP contract, Defendants certified that ". . . (2) all required inspections have been completed; [and] (3) the units for which assistance is billed are decent, safe, sanitary, and occupied or available for occupancy[.]" HUD Form 52670 in their requests for monthly assistance payments.

30.     Defendants knew or had reason to know that the twelve units within Ellis, and Ellis as a whole, were not decent, safe, sanitary or in good repair in violation of the HAP contract.

31.      The conditions had been reported to Defendants, were longstanding, and/or were observed or should have been observed by Defendants in connection with its duty to regularly inspect, maintain and repair Ellis. 24 C.F.R. § 886.318.

32.     HUD may impose a civil monetary penalty on any owner, general partner, or identity-of-interest agent of a property receiving project-based housing assistance from HUD under Section 8 of the United States Housing Act of 1937, 42 U.S.C. §§ 1437f, 1437z-1(b)(1)(A)-(C); 24 C.F.R. § 30.68 for violating a HAP contract by failing to provide decent safe and sanitary housing in good repair as required by that contract.

33.     Based on those findings, on February 15, 2022, HUD assessed a penalty of $702,266.75 against Defendants for violations of the HAP contract as authorized by 42 U.S.C. § 1437z-1 and 24 C.F.R. § 30.68. This penalty was $60,305.25 less than the maximum allowed by law.

34.     HUD served a complaint (the "Complaint") on Defendants via United Parcel Service ("UPS") and electronic mail on February 15, 2022, and simultaneously filed it with the HUD Office of Hearing and Appeals. Exh. 1, HUD Administrative Case OGC 22-003-CMF.

35.     As alleged in the Complaint, Defendants violated Apex Chicago's HAP contract by failing to provide housing that is decent, safe, sanitary, and in good repair, and sought civil money penalties from Defendants under 42 U.S.C. § 14437z-1, as implemented by C.F.R. part 30, for the violation. Exh. 1, pp. 11-29.

36.     The Complaint notified Defendants of their right to contest the allegations by requesting a hearing before an administrative law judge no later than 15 days following receipt of the Complaint. Exh. 1, p. 35,

37.     The Complaint stated that the 15-day period could not be extended. *See* 24 C.F.R. § 30.90(a). *Id*.

38.     The Complaint provided that if Defendants failed to submit a timely request for a hearing, the Complaint and the proposed penalty would constitute a final and unappealable

determination, and the penalty would be immediately due and payable by Defendants without further proceedings. *See* 42 U.S.C. § 1437z-1(c)(2)(A); 24 C.F.R. § 30.90. *Id*. at p. 36.

39.     Defendants' request for a hearing was due on March 2, 2022.

40.     Defendants failed to timely request a hearing after receipt of the Complaint.

41.     The imposition of the penalties thus became a final and unappealable determination under 42 U.S.C. § 1437z-1(c)(2)(A) and constituted the final agency action.

42.     On March 16, 2022, HUD filed a motion requesting that HUD Office of Hearing and Appeals dismiss the Complaint for lack of jurisdiction due to Defendant's failure to timely fire a hearing request.

43.     On March 28, 2022, the HUD Office of Hearing and Appeals issued an Order of Dismissal (the "Order"), concluding that the penalty proposed in the Complaint had become final under 12 U.S.C. § 1735f-14(c)(2), and that the Court lacked authority to adjudicate this matter. Exh. 2, HUD Dismissal Order pp. 2-3.

44.     The Order noted that Defendants had 20 days to appeal the Order in a court of appeals of the United States in accordance with 12 U.S.C. § 1735f-14(d).  The Order was served on the Defendants and their counsel of record on March 29, 2022, by email, as permitted by HUD regulations. *Id*. at p. 3, f. 1.

45.     Defendants failed to timely appeal the Order.

46.     On May 19, 2022, HUD sent a demand letter to the Defendants via email and UPS for payment of $702,226.75 within fifteen days. Defendants neither replied nor paid the penalty.

47.     On or about July 5, 2022, HUD referred the debt to the Department of the Treasury's Bureau of Fiscal Services pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, *et seq*.

48.     In accordance with the attached Certificate of Indebtedness ("COI") (Exh. 2) Defendants are indebted to the United States in the total amount of $702,226.75, plus interest through the date of judgment, delinquent penalty charges  accrued at the annual rate of 6.00%, the Treasury's Bureau of Fiscal Services' Debt Management Services ("DMS") and Department of Justice fees.  Interest is continuing to accrue.

49.     Executive agencies of the United States, including HUD, are authorized, and required to seek to collect claims for money owed the United States arising from the activities of, or referred to, the agency. 31 U.S.C. § 3711(a)(1).

50.     The Federal Debt Collection Procedures Act provides the exclusive civil procedure to recover a judgment or a debt. *See* 28 U.S.C. § 3001(a)(2).

51.     A debt includes an amount owing to the United States on account of an overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States.  *See* 28 U.S.C. § 3002(3)(B).

## CLAIM

52.     Paragraphs 1 through 51 are incorporated herein by reference.

53.     Defendant is liable to the United States in the total amount of $702,226.75 plus accrued interest at the annual rate of 1.0%; delinquent penalty charges accrued at the annual rate of 6.00%; and the Treasury's Bureau of Fiscal Services' Debt Management Services ("DMS") and Department of Justice fees; and an administrative fee of $20 pursuant to 31 U.S.C. § 3717(e), 3117(a), and 3711(g)(6), and 28 U.S.C. § 527.

54.     No part of the aforesaid sum has been paid, although duly demanded.

WHEREFORE, the Plaintiff demands judgment against the Defendants for the amount due and owing, as follows:

(a)     in the principal amount of $ 702,266.75;

(b)     in the amount of $5,168.68 for interest that accrued at the rate of 1.00% per annum through February 15, 2023, plus all additional accrued interest through payment, pursuant to 31 U.S.C. § 3717(a);

(c)     in the amount of $31,012.08 for penalty fees at the rate of 6.00% per annum pursuant to 31 U.S.C. § 3717(e);

(d)     DMS and DOJ fees pursuant to 31 U.S.C. § 3711(g)(6), 28 U.S.C. § 527;

(e)     post-judgment interest, pursuant to 28 U.S.C. § 1961 at the legal rate from the date of entry of judgment until the judgment is paid in full;

(f)     fees and costs, pursuant to 28 U.S.C. §§ 1914(a) and 2412; and

(g)     such other and further relief as this Court may deem just and equitable.

Dated: Brooklyn, New York
       March 30, 2023

                                        BREON PEACE
                                        United States Attorney for the
                                        Eastern District of New York

                                        By: /s/ Edward Newman
                                        _____

                                        Edward Newman
                                        Assistant United States Attorney
                                        271 Cadman Plaza East
                                        Brooklyn, NY 11201
                                        (718) 254-7000